**OUTDOOR POWER EQUIPMENT INSTITUTE, INC., Plaintiff,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

Civ. A. No. 77–0897.

United States District Court, District of Columbia.

Sept. 23, 1977.

Mac S. Dunaway, Washington, D.C., for plaintiff.

Donald W. Fowler, U. S. Dept. of Justice, Ronald S. Naveen, E. P. A., Washington, D.C., for defendant.

## MEMORANDUM OPINION

SIRICA, District Judge.

This case arises out of administrative action taken by the Environmental Protection Agency (EPA) under section 5(b)[1] of the Noise Control Act, P.L. 92–574, 86 Stat. 1234, 42 U.S.C. §§ 4901–18 (Supp. V 1975), designating lawnmowers a "major source of noise" within the meaning of the Act. This designation commits the agency, under section 6(a)[2] of the Act, 42 U.S.C. § 4905(a) (Supp. V 1975), to begin an administrative process culminating in the issuance of appropriate regulations. Plaintiff, a trade association of lawnmower manufacturers, seeks an order voiding the designation and prohibiting the agency from proceeding to promulgate regulations for lawnmowers.

Plaintiff challenges the action taken by EPA as repugnant to the due process clause of the fifth amendment, as contrary to the notice and comment requirements imposed by the Administrative Procedure Act, 5 U.S.C. § 553 (1970), as beyond the scope of statutory authority and as arbitrary, capricious and an abuse of discretion. The matter is presently here on plaintiff's application for a preliminary injunction and defendant's motion to dismiss the action for lack of subject matter jurisdiction and because the administrative decision under attack is neither final nor ripe for review. For the reasons that follow, the Court is of the opinion that jurisdiction over the subject matter is lacking and, for this reason, the action must be dismissed.

The question of whether this Court has jurisdiction to review the administrative action at issue does not turn on whether the subject matter of this dispute comes within the broad jurisdictional coverage of 28 U.S.C. § 1331. *See Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Assuredly it does, and without more the matter at hand would properly be before the Court as arising under federal law. Rather, the question here is whether a more specific jurisdictional provision divests this Court of jurisdiction by providing that administrative action of

1. Section 5(b) of the Act, 42 U.S.C. § 4904(b) provides in relevant part:

The Administrator shall, after consultation with appropriate Federal agencies, compile and publish a report or series of reports (1) identifying products (or classes of products) which in his judgment are major sources of noise, and (2) giving information on techniques for control of noise from such products, including available data on the technology, costs, and alternative methods of noise control. The first such report shall be published not later than eighteen months after October 27, 1972.

2. Section 6(a) of the Act, 42 U.S.C. § 4905(a) reads in part:

(1) The Administrator shall publish proposed regulations, . . . for each product—
(A) which is identified (or is part of a class identified) in any report published under section 4904(b)(1) of this title as a major source of noise,

(B) for which, in his judgment, noise emission standards are feasible, and
(C) which falls in one of the following categories:
(i) Construction equipment.
(ii) Transportation equipment (including recreational vehicles and related equipment).
(iii) Any motor or engine (including any equipment of which an engine or motor is an integral part).
(iv) Electrical or electronic equipment.

(2) (B) In the case of any product described in paragraph (1) which is identified (or is part of a class identified) as a major source of noise in a report published under section 4904(b)(1) of this title after publication of the initial proposed regulations under subparagraph (A) of this paragraph, regulations under paragraph (1) for such product shall be proposed and published by the Administrator not later than eighteen months after such report is published.

the kind involved in this case is to be reviewed exclusively in another forum. In this Court's view, section 16(a) of the Noise Control Act, 42 U.S.C. § 4915(a) (Supp. V 1975) was meant to be such a provision. It effectively precludes the District Courts from reviewing agency action undertaken in the process of promulgating noise control regulations. Exclusive review is vested in the United States Court of Appeals for the District of Columbia.

Under section 16(a) of the Act, 42 U.S.C. § 4915(a) (Supp. V 1975):

A petition for review of action of the Administrator of the Environmental Protection Agency in promulgating any standard or regulation under section 4905, 4916, or 4917 of this title . . . may be filed *only in the United States Court of Appeals for the District of Columbia* . . . within ninety days from the date of such promulgation . . . . Action . . . with respect to which review could have been obtained under this subsection shall not be subject to judicial review in civil or criminal proceedings for enforcement. (emphasis supplied).

The aim of this provision is clear. It is to make the Court of Appeals for this Circuit the exclusive judicial forum for reviewing EPA regulations issued under the statutory mandates of 42 U.S.C. §§ 4905 & 4916–17 to control noise emissions from railroad carrier equipment (§ 4916), motor carrier equipment (§ 4917) and, as is relevant here, items designated as "major sources of noise" (§ 4905). Thus if what plaintiff here is seeking to have reviewed is agency action reviewable under § 4915(a), then this Court lacks the power to entertain the challenge, and plaintiff must pursue his judicial remedies in the Court of Appeals.

Plaintiff agrees, as indeed it must, that this is the proper construction to be given § 4915(a). But it argues that the administrative action being challenged here is not a matter covered by this provision, and hence, the general jurisdiction of this Court is left undisturbed. The apparent basis for plaintiff's argument is a reading of the statute that imputes to Congress an intent to bifurcate the administrative process for controlling noise emissions into two separate and mutually exclusive steps, only one of which is subject to exclusive judicial review in the Court of Appeals. According to plaintiff, the first of these assertedly independent steps involves an administrative determination that noise controls are needed and takes the form of a published report, under section 5(b) of the Act, 42 U.S.C. § 4904(b) (Supp. V 1975), designating a product "a major source of noise." The second step involves the issuance of regulations applicable to the item so designated in the section 5(b) report. These regulations are statutorily mandated unless the agency determines that regulatory measures are "not feasible" within the meaning of section 6(a) of the Act, 42 U.S.C. § 4905(a) (Supp. V 1975). Plaintiff reasons that because the exclusive review provision is drafted to cover only action taken by EPA under 42 U.S.C. § 4905(a), the second of the required steps, then the section 5(b) designation, the first step, must therefore be reviewable in any court of competent jurisdiction.

This reasoning however is premised on a misreading of the statute. In the Court's opinion, sound policy and a proper regard for the structure and legislative purposes behind the Noise Control Act compel the conclusion that administrative action taken under § 4904(b) of the statute is not to be treated for purposes of judicial review as separate and distinct from action taken under § 4905(a). To conclude otherwise would misconstrue the single, continuous regulatory process plainly envisioned by the Act.

Section 5(b) of the Act, 42 U.S.C. § 4904(b) (Supp. V 1975), commands the EPA to commence an investigative program culminating in the identification of noise sources that warrant regulatory action:

The Administrator shall, after consultation with appropriate Federal agencies, compile and publish a report or series of reports (1) identifying products (or classes of products) which in his judgment are major sources of noise . . . .

The first such report shall be published not later than eighteen months after October 27, 1972.

Additional reports are to follow at intervals chosen by the agency.

Once these reports are published, section 6(a) of the Act, 42 U.S.C. § 4905(a) (Supp. V 1975), requires the agency promptly to issue proposed regulations for any product so identified as a "major source of noise":

The Administrator shall publish proposed regulations . . . for each product—

(A) which is identified (or is part of a class identified) in any report published under section 4904(b)(1) of this title as a major source of noise,

(B) for which, in his judgment, noise emission standards are feasible, and

(C) which falls in one of the following categories:

.    .    .    .    .

(iii) Any motor or engine (including any equipment of which an engine or motor is an integral part).

.    .    .    .    .

These proposed regulations are to be promulgated

not later than eighteen months after [a report issued under section 4904(b)(1)] is published.

42 U.S.C. § 4905(a)(2)B (Supp. V 1975). And once the agency has published proposed regulations, as EPA has yet to do in the instant case:

. . . the Administrator shall allow interested persons an opportunity to participate in rulemaking in accordance with the first sentence of section 553(c) of Title 5.

42 U.S.C. § 4905(c)2 (Supp. V 1975).

Then, unless noise regulations for a particular product are determined to be "not feasible," the agency

. . . [shall] prescribe regulations .    . for such product—

(A) not earlier than six months after publication of  . . . proposed regulations, and

(B) not later than—

.    .    .    .    .

(ii) .    .    . twenty-four months after the publication of the report under section 4904(b)(1) of this title identifying it (or a class of products of which it is part) as a major source of noise.

42 U.S.C. § 4905(a)(3) (Supp. V 1975).

Judicial review in the Court of Appeals is to take place following the promulgation of final regulations.

■ These provisions are susceptible to the interpretation urged by plaintiff that once the agency identifies a product as a "major source of noise" warranting regulatory action, the agency has completed a distinct administrative process and *must* go forward and issue final noise regulations unless it finds, in a separate regulatory process, that regulations are not feasible. Were this so, it would lend credence to plaintiff's view that section 5(b) identifications, on the one hand, and regulations promulgated under section 6(a), on the other, were meant to be independent regulatory enterprises, and hence, separate for purposes of judicial review. A close look at the statute however reveals that this is simply not the case. A fair reading of section 5(c) of the Act, 42 U.S.C. § 4904(c) (Supp. V 1975), indicates that the agency possesses explicit authority to halt the regulatory process whenever it finds, on the basis of the developing administrative record, that control measures are not needed:

The Administrator shall from time to time review *and, as appropriate, revise* . . . reports published under this section. (emphasis supplied).

Indeed, this provision not only *authorizes* the agency to halt the regulatory process for items mistakenly identified as major sources of noise requiring regulation, it *obligates* the agency to make continuous reassessments of its section 5(b) determinations and, once the results are in, to adjust the administrative process as appropriate. Moreover, this duty to reassess determinations of need carries forward into the regulatory phase where the agency is soliciting

the views of interested persons in the course of promulgating final noise standards. To construe this provision otherwise could result in the untoward situation where the agency is forced into issuing regulations even though information compiled subsequent to the section 5(b) designation indicates that no regulatory measures are actually needed. Congress could hardly have intended to commit the agency to so imprudent a course.

In the Court's view, then, the question of need is not conclusively settled by the publication of a section 5(b) report. Rather, the issue remains open throughout the period when the agency is acting under section 6(a) of the Act to determine whether final control standards are feasible. Thus the regulatory scheme may be viewed as involving not two distinct and independent administrative processes, but rather a single, continuous effort whose final outcome is to be reviewed, under the terms of section 16(a) of the Act, 42 U.S.C. § 4915(a) (Supp. V 1975), only in the Court of Appeals.

The soundness of this view is underscored by an analysis of the legislative purposes embodied in the statute. What emerges is that Congress intended the Act to create a regulatory mechanism capable of operating according to a specified time schedule. See 42 U.S.C. §§ 4904(b), 4905(a)(2)B & 4905(a)(3) (Supp. V 1975). Were this Court to accept plaintiff's contention that threshold section 5(b) designations are to be treated as reviewable agency action separate and apart from regulatory standards issued under section 6(a), the likely effect would be to impair the integrity of the time sequences provided in the statute. If plaintiff's interpretation were to prevail, situations would inevitably arise where preliminary administrative action is needlessly tied up in the courts beyond the time frames specified by Congress. This delay would indeed be needless because the substantive grounds underlying the threshold challenge could just as well be presented to the Court of Appeals when judicial review is sought, as provided in the Act, at the conclusion of

the regulatory process. Nor will litigants be forced to sacrifice their legal objections to the regulatory process by having to present them in due course to the Court chosen by Congress to be the exclusive arbiter of challenges to regulatory action under the Noise Control Act. The Court of Appeals is fully competent to hear such challenges and is empowered to grant whatever relief may be appropriate. See 42 U.S.C. § 4915(c) (Supp. V 1975).

A further indication that Congress intended to make the Court of Appeals the forum for reviewing both section 5(b) determinations and regulatory standards emerges from an examination of section 6(b) of the Act, 42 U.S.C. § 4905(b) (Supp. V 1975). This provision, unlike section 6(a) of the Act, permits the agency to propose regulations for any offending product it sees fit without first having to designate it a "major source of noise." The inference is that section 6(b) was meant to permit control of less offensive sources of noise, while section 6(a) mandates regulation of products identified as "major sources." Were the Court to accept plaintiff's contention that 5(b) designations are separately reviewable, the result would be this: separate judicial review with likely delays in the administrative process where the agency is endeavoring to regulate "major sources of noise," but no separate judicial review and no resulting delays in the regulatory process where the agency is proceeding to control less troublesome sources of noise. This anomalous situation could hardly reflect the intent of Congress. In short, plaintiff's reading of the statute does not accord with Congressional intent, and thus, cannot be accepted.

For these reasons, then, the Court is of the opinion that exclusive jurisdiction to review administrative action taken by EPA under section 5(b) of the Noise Control Act, 42 U.S.C. §§ 4901–18 (Supp. V 1975), lies in the Court of Appeals for this Circuit. Accordingly, the motion of defendant to dismiss plaintiff's complaint must be granted.

An appropriate order will issue of even date herewith.